JOHN WEIDE

v.

HENRIETTA THIEL.

1. STATEMENT.—Appellant, being the owner of a bull, left him in the care of D. for use during the season. D. kept the animal in a well-fenced pasture, where he remained quiet for some weeks, and until, by the agency of appellee's sons, he broke over into appellant's and gored appellee's mare, which was the injury complained of. The action is brought under the statute relating to male animals running at large.

2. NEGLIGENCE—BAILEE.—The bailee, and not the bailor, is liable for the trespass of his cattle while in charge of the bailee, unless the bailor has selected an irresponsible bailee, and knows, or has reason to believe, that the cattle would commit the trespass when placed in his care.

3. OWNER NOT LIABLE.—Only a reasonable effort to restrain the animal is required, and if no reasonably prudent man would have foreseen this result, then the owner is not liable, even had the animal broken out without the fault of appellee or her agents.

4. DUTY OF BAILEE.—If the bailee knew all about the animal, it was his business to keep him secure, but he was only bound to keep him in an enclosure reasonably secure for that purpose, when not interfered with by the agents of appellee.

APPEAL from the Circuit Court of Putnam county; the Hon. N. M. LAWS, Judge, presiding. Opinion filed Nov. 2, 1881.

Mr. WM. H. CASSON and Mr. FRED. S. POTTER, for appellant; that trespass will not lie against the owner of cattle in the hands of an agister, cited Ward v. Brown, 64 Ill. 307.

The Practice Act does not change the law as to what should be alleged in a count to make it good in trespass or case. St. L. & T. R. R. Co. v. Summit, 3 Bradwell, 160; Blalock v. Randall, 76 Ill. 224; Bassett v. Bratton, 86 Ill. 152; C. R. I. & P. R. R. Co. v. Todd, 91 Ill. 70; T. W. & W. R. R. Co. v. Biggs, 85 Ill. 80.

Mr. C. C. JONES and Mr. P. S. PERLEY, for appellee; cited Rev. Stat. 1874, Chap. 8, § 10; Mareau v. Vanatta, 88 Ill. 132; Ward v. Brown, 64 Ill. 307.

LACEY, J.   Appellee sued appellant in an action of trespass

to recover damages alleged to have been done to appellee's mare by the bull of appellant in goring her with his horns.

The action is brought under Sections 8 and 10 of Chap. 8, R. S. 1874, prohibiting bulls and certain other male animals from running at large, and providing that every such owner or keeper of such male animals who shall allow any such male animal to go unrestrained or run at large, shall be deemed liable for all damages that may accrue to others, whether to their persons or their property, as stock breeder or otherwise, caused or brought about by the unrestraint or running at large of said male animals.

The declaration avers that the appellant was the owner and keeper of a bull, and knowing said bull was liable to do damage to others and to their property if allowed to run at large, did so negligently and unlawfully keep and care for said bull, that the said bull for want of safe keeping and proper confinement and care on the part of defendant and his servants, did wander away and run at large, and was allowed by appellant to come to appellee's pasture and unlawfully break and enter therein, and attacked and gored and wounded appellee's mare with his horns, etc.; claiming damages in the sum of $200.

On the trial the appellee recovered damages to the amount of $67. The evidence shows that about the 1st October, 1880, appellant loaned the bull to Charles Dietch, to keep for Dietch's use, who was to take good care of him. Dietch had a pasture containing about thirty-six acres adjoining a pasture of seven or eight acres of appellant, separated by a partition fence; the fence around Dietch's pasture was newly built, nine rails high, and staked and ridered. The partition fence between him and appellant was not quite so good. Dietch was a careful man. The appellant and Dietch each had knowledge that the bull would break out over fences when cows were around wanting him.

Appellant and Dietch had equal knowledge of the habits and disposition of the bull as to his being breachy or otherwise. The bull was never known to hurt anything before. He had been kept in Dietch's pasture about two weeks without getting out. Fred Thiel, who was about 21 years old, and

Weide v. Thiel.

lived with his mother, appellee, had care of her stock, the mare in question and her cattle, ever since his father's death, about four years before the trial.    On the morning of the day pre-ceding the one on which the mare was hurt, Fred and Lewis Thiel and another son of appellee, drove one of her cows to and turned her into Dietch's pasture without leave, to be served by the bull, leaving her there all day, when at evening they took her out and drove her home.    At the time they took her out the bull followed along on the inside of the fence and finally jumped out of the pasture into appellant's pasture, which, as we understand, adjoins that of appellee, where the mare was kept.    The next morning the bull jumped into the pasture where the mare was, and during the day gored her.    At the time the cow of appellee was taken out of Dietch's pasture, the Thiel boys saw the bull jump out while chasing after the cow that they were taking away.    They neither put the bull back into the pasture nor informed Dietch that he was out. They knew that he was in the habit of following appellee's cows home after he had served them, for he had done so before. Dietch was absent from home that day and knew nothing about the bull being out.

It does not appear by any evidence that either Dietch or appellant knew that the bull was out of the pasture before the time the mare was gored.    The accident happened so shortly after the bull broke out that they would not be presumed to have had known of his having broken out.    It seems the fence around Dietch's pasture was a good one, and had been suffi-cient to hold the bull securely from October 1st to 21st, and from anything that appears in evidence, would have so con-tinued to retain him, had the sons of appellee not intermeddled with him.    The breaking out of the bull from the enclosure where he was kept is directly traceable to the conduct of ap-pellee's sons, who must be presumed under the evidence to have had the sanction of appellee for what they did.    If it was appellee's fault that the bull got out of the pasture, and she thereby materially contributed to bringing the injury on her-self, she cannot recover.    Keightlinger v. Egan, 65 Ill. 235.    It does not appear that the bull was hard to restrain and keep

inside inclosures. The only case shown that would cause him to break out, was to go after cows. The evidence does not disclose that appellant knew any more of the habits or disposition of the bull than did Dietch.

Deitch was a careful, prudent man. This was known to appellant. In what does appellant's negligence consist? Not, certainly in selecting his bailee. Does it consist in not informing the bailee of all the bad traits of the bull as to being breachy? It does not. For Dietch knew as much about it as did appellant. What omission of duty has he been guilty of? We can not see any.

In Ward et al. v. Brown, 64 Ill. 304, the Supreme Court say that the bailee and not the bailor is liable for trespass of his cattle while in charge of the bailee unless " the bailor had selected an irresponsible bailee, and had known or reason to believe that the cattle would commit the trespass when placed in his hands," then in an action of case setting up the facts the owner might be liable. In this case, as the statute requires this class of animals to be restrained from running at large, it may be true that if the appellant was negligent in selecting his bailee, or knew or might have known that the bailee would allow the bull to escape through negligence, that he would be liable, under a declaration containing the proper averments. It seems to us that even if the declaration was properly drawn, that there is a manifest want of evidence to sustain the verdict. Would a reasonably prudent man foresee, placed in the situation of the appellant at the time he let Dietch have the bull in charge, that this bull would after being placed in a pasture with a good fence, sufficient to restrain him for two weeks, break out of the pasture? If no reasonably prudent man would have forseen this result then the appellant could not be liable, even had the bull broken out without any fault of appellee or her agents. Only reasonable effort to restrain the bull was required.

It was not necessary to guard against all possible contingencies. We think taking all the facts of the case as appears from the evidence in the record, the verdict is not sustained by the evidence.

The third instruction given for appellee is erroneous, for the reason that it appears from the evidence that Dietch knew as much about the bull's habits as appellant, and it was not his duty to see at all times that Dietch would keep the bull secure.

If Dietch knew all about the bull, it was his business to keep him secure, and even Dietch was only bound to keep the bull in an enclosure reasonably secure for that purpose, when not interfered with by agents of appellee.

The modification of the appellee's instruction was erroneous for want of evidence on which to base it. There is no evidence to show that appellant knew where Dietch intended to put the bull, but Dietch promised to take good care of him. For these reasons the judgment is reversed and cause remanded.

Reversed and remanded.